## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE | : CHAPTER 7 |
| | : |
| BRIAN LEMOINE | : |
| | : |
| DEBTOR(S) | : BANKRUPTCY NO. 12-11152 |

# OPINION

*Introduction*

The Debtor has moved to reopen his Chapter 7 case in order to file a dischargeability complaint.  He seeks to discharge his liability for legal fees incurred by his ex-wife as part of their divorce proceeding.  The Debtor's ex-wife objects to the request.  For the reasons set forth below, the Debtor's request to reopen his bankruptcy case will be denied.[1]

*Background*

On June 10, 2011, the Debtor and his ex-wife's divorce decree was entered. *See* Debtor's Motion, Ex. C.  Their decree provided that the Debtor was required to pay child support, reimburse his wife for various expenses and to provide life and health insurance.  *Id.*  In addition, the Debtor is required to reimburse his ex-wife for certain legal fees and costs which she incurred in that proceeding.  *Id.*  Debtor's ex-wife submitted her bill for those fees to the Debtor in July 2011.  *Id.* Ex. D.  Debtor was required to pay those fees in installments commencing December 31, 2011.  *Id.*

In September 2011, Debtor's ex-wife filed a complaint against him for contempt

---

[1] This ruling is within the Court's core jurisdiction.  *See* 28 U.S.C. § 157(b)(2)(A), (I) (matters concerning administration of the estate and determinations as to the dischargeability of particular debts)

of court.  Objection, Ex. C.  The complaint alleged that Debtor failed to pay child

support, to reimburse her for child-related expenses and to provide life and health

insurances.  *Id.*  In November 2011 the state court entered an order requiring Debtor to

pay such expenses by a date certain. *Id*. Ex. D. If he failed to do so, he could be

responsible for his ex-wife's legal fees incurred in commencing the contempt

proceeding.  *Id.*

In February 2012 the Debtor commenced his Chapter 7 case.[2] That same month

the state court found him in contempt of court for failing to pay child support.  Objection,

Ex. E.  He was also ordered to pay additional legal fees.  *Id.*

In June 2012 the Debtor's ex-wife filed a second complaint for civil contempt.

Motion, Ex. B.  This second action was based on Debtor's failure to reimburse her for

health insurance premiums and to pay legal fees as previously ordered.  *Id.*

In July 2012, the Debtor received a discharge under § 727 of the Bankruptcy

Code.  The discharge order was in the standard form which lists among debts not

discharged "domestic support obligations." *See* Motion, Ex. A.

In August 2012, the trial court convened a hearing on the ex-wife's second

contempt complaint.  At the hearing, the Debtor informed the state court that he would

seek an order to reopen his case in order to discharge any liability for legal fees.  Based

on that representation, the state court entered an order reserving judgment on the

question of an award of counsel fees until this Court ruled on the Debtor's motion to

reopen.  *See* Objection, Ex. G.

In September 2012, the Debtor filed the instant motion to reopen.  His ex-wife

---

[2] Debtor's Schedule E lists four separate  debts owed to his ex-wife.  They include a one half interest in a
promissory note, child support arrears, unpaid health insurance premiums, and a one-half interest in a retirement
account.  Schedule F lists the legal fees owed to his wife.  All are disputed.

opposed the motion.  A hearing on the matter was held on October 31, 2012, after
which the Court took the matter under advisement.

*Reopening a Case*

A bankruptcy "case may be reopened in the court in which such case was closed
to administer assets, to accord relief to the debtor, or for other cause." 11 U.S.C.A. §
350(b).  A case will be reopened only where one of the three stated ground are found to
exist.  *In re Lee*, 356 B.R. 177, 180 (Bankr.N.D.W.Va. 2006).  The party moving to
reopen a case has the burden of proof.  *In re Cloninger*, 209 B.R. 125, 126
(Bankr.E.D.Ark. 1997).  The decision to reopen a case is within the Court's sound
discretion.  *Apex Oil Co. v. Sparks (In re Apex Oil* Co.), 406 F.3d 538 (8th Cir. 2005); *In
re Shondel*, 950 F.2d 1301, 1304 (7th Cir. 1991).

As to which of the three grounds in § 350(b) support his request to reopen, the
Debtor does not specifically state.  Certainly, what he intends here does not involve
administration of assets.  Equally, because "cause" in this context has not been
defined,[3] the Court is hesitant to interpret Debtor's request to suggest that.  What
remains is reopening his case "to accord relief."  That seems consistent with the
Debtor's purpose: he would like to commence a dischargeability action in order to
discharge a claim for legal fees incurred by his ex-wife.  *See* 3 *Collier on Bankruptcy* ¶
350.03[4] ("Debtors, or occasionally creditors, may also file motions to reopen to
determine the dischargeability of a debt.")

*Concurrent Jurisdiction*

Because the Debtor's ex-wife opposes reopening the case and instead prefers to
leave matters in the state family court, the question of jurisdiction is necessarily

---

[3] *See* 3 *Collier on Bankruptcy* ¶ 350.03[5]

implicated.  That *this* court has jurisdiction is clear: a determination of the

dischargeability of a particular debt is within the court's jurisdictional competence.  *See*

28 U.S.C. § 157(b)(2)(I) (including among a bankruptcy court's core jurisdictional

proceedings dischargeability of a particular debt).  That does not mean, however, that

this court has *exclusive* jurisdiction over this question.  The Bankruptcy Code provides

that a divorce case is generally not affected by a bankruptcy filing.  *See* 11 U.S.C. §

362(b)(2)(A)(iv) (providing that "the filing of a petition does not operate as a stay… for

the dissolution of a marriage, except to the extent that such proceeding seeks to

determine the division of property that is property of the estate.") Although the Debtor

hopes to have a federal court determine his rights under applicable federal law, "state

courts of general jurisdiction have the power to decide cases involving federal … rights

where… neither the Constitution nor statute withdraws such jurisdiction."  *Aurre v.*

*Kalaigan (In re Aurre),* 60 B.R. 621, 624 (Bkrtcy. S.D.N.Y. 1986) *quoting Boston Stock*

*Exchange v. State Tax Comm'n*, 429 U.S. 318, 319, n. 3, 97 S.Ct. 599, 602 (1977).

With regard to the discharge of particular debts in bankruptcy, the bankruptcy court

retains exclusive jurisdiction as to only a small subset of such matters.  *See* 11 U.S.C. §

523(c)(1) (providing that bankruptcy court shall determine dischargeability of debts

listed in subsection (a)(2), (4) and (6) of §523 (actual fraud, fiduciary fraud, and

willful/malicious injury)); *In re Smith*, 125 B.R. 630, 631 (Bkrtcy.E.D.Okla.1991)  Debts

for alimony or support (§ 523(a)(5)) or those incurred in connection with divorce or

support (§ 523(a)(15)) are not among the debts listed in § 523(c)(1); therefore, a state

trial court has concurrent jurisdiction with the bankruptcy court to determine

dischargeability.  *See In re Burns,* 306 B.R. 274, 277 (Bkrtcy.E.D.Mo.2004); *Nutter v.*

4

*Reed (In re Reed)*, 161 B.R. 943, 944-45 (Bkrtcy.N.D.Ohio 1993).

*Permissive Abstention*

Given the existence of concurrent jurisdiction, this Court turns to the question of

whether *it* should[4] hear the case or abstain in favor of the state court.  Congress'

statutory grant of jurisdiction for bankruptcy matters provides that

> [n]othing in this section prevents a district court in the interest of justice, or
> in the interest of comity with State courts or respect for State law, from
> abstaining from hearing a particular proceeding arising under title 11 or
> arising in or related to a case under title 11."

28 U.S.C. § 1334(c)(1).  "The non-specific language of the statute, its evolution, and the

paucity of legislative history has resulted in somewhat different approaches toward

permissive abstention of bankruptcy proceedings." *Best v. Galloway (In re Best)*, 417

B.R. 259, 273-274 (Bkrtcy.E.D.Pa.2009) *citing* Block-Lieb, *Permissive Bankruptcy*

*Abstention*, 76 Wash.U.L.Q. 781 (Fall 1998).  This variance may be attributed to the fact

that a court of appeals has no jurisdiction to review the application of discretionary

abstention.  *See* 28 U.S.C. § 1334(d); *In re Federal-Mogul Global, Inc.*, 300 F.3d 368,

389 n.14 (3d Cir. 2002).  For that reason, courts have broad discretion to abstain from

adjudicating claims.  *In re Greene*, 1999 WL 689711, at *3 (E.D.Pa.1999, Sept. 7,

1999).  This includes a decision to abstain *sua sponte*.  *See Gober v. Terra+Corp.*, 100

F.3d 1195, 1207 n. 10 (5th Cir. 1996).

Family law in particular is a domain from which federal courts will often abstain.

*See Ankenbrandt v. Richards*, 504 U.S. 689, 703, 112 S.Ct. 2206, 2215 (1992)

---

[4] As to whether mandatory abstention is an option, there are two reasons why it is not.  First, as a matter of
procedure, it may not be raised *sua sponte*.  *See* 28 U.S.C. § 1334(c)(2); *see also In re Vanhook*, 468 B.R. 694, 700 .
18 (Bkrtcy.D.N.J.2012).  Second, because the Debtor is raising a core jurisdictional matter (i.e., non-
dischargeability), mandatory abstention is precluded.  *See In re Drauschak*, 2012 WL 5378108, at * 5
(Bkrtcy.E.D.Pa., Nov. 1, 2012); *In re Arid Waterproofing, Inc.*, 175 B.R. 172 B.R. 179 (Bkrtcy.E.D.Pa.1996).

(reaffirming the "domestic relations" exception to federal court jurisdiction). *Siragusa v. Siragusa (In re Siragusa),* 27 F.3d 406, 408-09 (9th Cir.1994) (bankruptcy court did not abuse its discretion by deferring to the state court as to whether payments to creditor-wife were dischargeable); *Thaggard v. Pate (In re Thaggard),* 180 B.R. 659, 662-64 (M.D.Ala.1995)(bankruptcy court did not abuse its discretion in abstaining on issue of whether enforcement of support obligations violated automatic stay).  A leading commentator explains that "[h]istorically, federal courts have been loath to become involved in domestic relations matters of any kind.  Whether characterized as a lack of jurisdiction or as abstention from exercising jurisdiction, this exception has long been the basis for federal courts declining to hear cases involving divorce marital support or property settlements and child custody." *Collier Family Law and the Bankruptcy Code,* ¶ 5.01[1][a].

Courts in this Circuit often apply a twelve-factor test when deciding whether to abstain from hearing matters over which they have jurisdiction:

> (1) the effect or lack thereof on the efficient administration of the estate;
>
> (2) the extent to which state law issues predominate over bankruptcy issues;
>
> (3) the difficulty or unsettled nature of the applicable state law;
>
> (4) the presence of a related proceeding commenced in state court or other non-bankruptcy court;
>
> (5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334
>
> (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case;
>
> (7) the substance rather than the form of an asserted "core"

proceeding;

(8) the feasibility of severing state law claims from core bankruptcy
matters to allow judgments to be entered in state court with the
enforcement left to the bankruptcy court;

(9) the burden of the court's docket;

(10) the likelihood that the commencement of the proceeding in
bankruptcy court involves forum shopping by one of the parties;

(11) the existence of a right to a jury trial; and

(12) the presence in the proceeding of non-debtor parties.

*In re Carriage House Condominiums, L.P,* 415 B.R. 133, 146-47 (Bkrtcy. E.D.Pa. 2009);

*Bricker v. Martin*, 348 B.R. 28, 34 (W.D.Pa. 2005); *Sun Healthcare Group, Inc. v. Levin*

*(In re Sun Healthcare Group, Inc.),* 267 B.R. 673, 678-79 (Bkrtcy.D.Del.2000)

("Evaluating the twelve factors is not a mathematical formula," some factors may

predominate based on the circumstances of the case.)  The following analysis will

evaluate those factors which are germane to the question of abstention.[5]

*Abstention in the
Interest of Justice*

The court considers first whether retaining jurisdiction or abstaining works

injustice upon either party.  It seems grossly unfair to the Debtor's ex-wife, a non-debtor,

to require her to litigate the instant dispute in a new forum.  Admittedly, she is a creditor

of the Debtor, but this being a no asset case, the payment of her legal fees will not

come from a bankruptcy estate but from the Debtor himself.

---

[5] Factors 9 and 12 are either not established  or do not matter.  There is no evidence that the pending litigation in
Massachusetts is a burden on that court's docket or not.  Likewise, the issue of a jury trial is not before the court.

Yet perhaps what is most unjust about Debtor's request is the timing. The

Debtor's motivation in deciding to litigate the question of dischargeability of legal fees

*when* he did is suspect.  His liability for those fees was established in June 2011.  Yet,

when he filed his bankruptcy 8 months later he did not seek to discharge the fees then.

In fact, his intention to challenge those fees was not announced until August of this year

which was less than one month after the bankruptcy case was closed.  This was after

he was found to be in contempt of the divorce judgment.  This appears to be a case of

forum-shopping: the Debtor hopes to avoid liability for legal fees by seeking relief in a

different court.  *See In re White*, 851 F.2d 170, 174 (6th Cir.1988) (affirming lifting of stay

to allow divorce proceeding to proceed notwithstanding bankruptcy because

"Bankruptcy Code could otherwise be abused as a weapon in a marital dispute.")  This

court is not the place to litigate what is, for all intents and purposes, a two-party dispute.

For purposes of justice, factors 4 and 10 support abstention.

*Abstention in the*
*Interest of Comity*

Federalism concerns also matter here.  Again, a decision to abstain may be

made "in the interest of comity."  The Supreme Court has defined comity as "a proper

respect for state functions, a recognition of the fact that the entire country is made up of

a Union of separate state governments, and a continuance of the belief that the National

Government will fare best if the States and their institutions are left free to perform their

separate functions in their separate ways."  *Younger v. Harris*, 401 U.S. 37, 44, 91 S.Ct.

746, 750 (1971); s*ee Schall v. Joyce,* 885 F.2d 101, 106 (3d Cir 1989) ("Abstention

under *Younger* is appropriate only if (1) there are ongoing state proceedings that are

judicial in nature; (2) the state proceedings implicate important state interests; and (3)

8

the state proceedings afford an adequate opportunity to raise federal claims.")  *See also In re MacDonald, 755* F.2d 715, 717 (9th Cir. 1985) *quoting In re Graham,* 14 B.R. 246, 248 (Bktrtcy.W.D.Ky.1981) ("[I]t is appropriate for bankruptcy courts to avoid invasions into family law matters, 'out of consideration of court economy, judicial restraint, and deference to our state court brethren and their established expertise in such matters.'")

At the outset, the Court observes that the state court in question has original jurisdiction over divorce proceedings.  *See* Mass. Gen. Laws c. 208, § 1 *et seq.*  As far as this Court is concerned, it indisputably has jurisdiction over dischargeability matters (*see* 28 U.S.C. § 157(b)(2)(I)), but the underlying determination will be based on state divorce law.  *See* Mass. Gen. Laws c. 208, § 38 (including among costs to be award costs of counsel) .  Moreover, aside from the question of "core" jurisdiction, the divorce proceeding's connection to this bankruptcy is attenuated at best.  For a matter to be related to a bankruptcy case for jurisdiction purposes, it must in some way possible affect the outcome of the administration of the estate. *See Pacor v. Higgins*, 743 F.2d 984, 994 (3d Cir.1984) (defining a related proceeding as one that might conceivably affect the outcome of the bankruptcy estate).  This bankruptcy, however, is a "no-asset" case and so there is no estate to be administered in the first place.  If there is jurisdictional weight to be accorded as between these two fora, it falls heavily in favor of the state court.

The same can be said when considering the substantive law.  Although non-dischargeability is governed by federal law, it will be Massachusetts law which determines whether the debt in question is dischargeable.  If legal fees are found to

constitute "support" as defined by that state's divorce code,[6] then such fees will be deemed *ipso facto* to be non-dischargeable.  Admittedly, that is not a complicated or unsettled legal issue and so either court could make the determination.  Yet it makes little sense to remove the matter from the state court at this juncture.  That court has intimate knowledge of the case and so it is well-positioned to make the determination.  If the state court finds that the fees are, in fact, support and are, therefore,  non-dischargeable, then that ruling could be enforced in that court, if necessary.  Accordingly, factors 1, 2, 4, 5, 6, 7, and 8 support abstention while only factor 3 does not.

*Conclusion*

Based on both the number and weight of the permissive abstention factors, the determination of dischargeability of the Debtor's liability for ex-wife's legal fees should be left with the state court.  Considerations of fairness, comity, as well as judicial economy make abstention the sensible course.  Accordingly, the Debtor's motion to reopen will be denied.

An appropriate order follows.

By the Court:

Stephen Raslavich
Chief United States Bankruptcy Judge

Dated:  November 26, 2012

---

[6] *See, e.g., C.D.L. v. M.M.L.*, 72 Mass.App.Ct.146, 889 N.E.2d 63 (Mass.App.Ct.2008). (awarding legal fees as support in divorce proceeding).